■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEHOSOPHAT FORCHALLE, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Kay, J.), rendered July 9, 1980, convicting him of attempted murder in the second degree (two counts) and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. The defendant, a 39-year-old ordained minister who had never before been involved with the law, was accused of shooting his former paramour, June Swindell, and her companion, Al Cheatham, as they sat in a car. The prosecution's theory was essentially that, although the defendant had married another woman, he was intent on continuing his relationship with Ms. Swindell, and shot her and Cheatham when she rebuffed his repeated advances. The defense contended that it was Ms. Swindell who wanted to maintain the relationship and who, angry and upset over the defendant's marriage, frequently threatened both him and his wife. The defendant testified that, while walking home one evening, he encountered Ms. Swindell who was seated in a car with Cheatham. She called to the defendant and, when he approached the vehicle, she pointed a gun at him. A struggle ensued during which the defendant, Swindell and Cheatham all placed their hands on the weapon. According to the defendant, the gun then fired four or five times, and he panicked and ran home. The jury resolved the sharp credibility issues against the defendant, convicting him of attempted murder (two counts) and possession of the weapon. We now reverse because we conclude that the defendant did not receive a fair trial. The evidence established that the defendant had first met Ms. Swindell when she joined his church, and their relationship grew out of her church activities. Defense witnesses, called to testify regarding Ms. Swindell's reaction to the defendant's

marriage and her threats against him and his wife, were, for the most part, fellow church members. Moreover, several character witnesses called by the defense were clergymen associated with the defendant. Thus, a certain amount of testimony touching upon the defendant's church activities was legitimately received at trial. Defense counsel, however, went further and attempted to use the defendant's church affiliation and position to demonstrate his respectability and high moral character. The prosecutor chose not to raise appropriate objections to thwart these defense efforts. Instead, he waited for cross-examination and then, presumably proceeding under the theory that the door had been opened, he pursued the subject by delving into the defendant's religious background and the practices of his church in a manner that was both highly prejudicial and inflammatory. Through his questioning of several witnesses and through his closing argument, the prosecutor sought to portray the defendant's church as less than legitimate. He suggested that money raised on behalf of the church was somehow misused and that the defendant and his colleagues established church by-laws to comport, not with traditional religious teachings, but with their own sexual appetites. In *People v Le Grand* (76 AD2d 706), the defendant, in an exceptional murder case, was established to have been the undisputed leader of a church "family." On appeal, he objected to the introduction of trial testimony concerning the life-style, religious beliefs, and moral values of the church members. In affirming the defendant's conviction, this court found that the challenged evidence was relevant to several unusual but crucial issues raised at trial. Accordingly, we held that "[i]n light of the extraordinary and indeed almost unparalleled circumstances of the case * * * we cannot conclude that the trial court abused its discretion in permitting the People to elicit some background evidence relating to the community with which the [defendant was] associated" (*id.* at p 710). Unlike in *Le Grand,* evidence of the practices of the defendant's church here had no relevance to any of the issues presented at trial and, most particularly, no relevance to the question of who had possessed and fired the weapon. Rather, a reading of the record suggests a broad attempt by the prosecutor to discredit the defendant by showing his affiliation with a group which, because of its unorthodox behavior, would be held in general disfavor (see *People v Kenyatta,* 17 AD2d 659). Such prosecutorial conduct is not only unfair but also tends to sidetrack the jury from the issue of innocence or guilt (see *People v Alicea,* 37 NY2d 601). It is true that the prosecutor's conduct was not entirely unprovoked. However, we cannot condone the prosecutor's actions, especially since he failed to take appropriate steps to block what he now contends was defense provocation (cf. *People v Melendez,* 55 NY2d 445). Had he made appropriate objection, the Trial Judge might well have restricted defense evidence to proper bounds. In any event, we conclude that the defendant was deprived of a fair trial. Two additional aspects of the case require comment. The prosecutor committed error by attempting to question the defendant's character witnesses concerning the criminal acts for which the defendant was on trial (see *People v Kennedy,* 47 NY2d 196, 206; *People v Santiago,* 78 AD2d 666). And, finally, we note that the evidence presented warranted a charge on justification (see *People v Steele,* 26 NY2d 526; *People v Burnell,* 84 AD2d 566). Mollen, P. J., Lazer, Mangano and Niehoff, JJ., concur.