■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RANDOLPH JENKINS, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Kooper, J.), rendered April 22, 1980, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, as a matter of discretion in the interest of justice, and new trial ordered. Defendant was indicted and charged with the murder of one Alfred Schuler. The evidence adduced at the trial by the prosecution showed that defendant stabbed the victim with a knife. Defendant's testimony at the trial regarding the homicide was that the victim attacked him with the knife by hitting him with the back of the handle under his eye. A struggle ensued during which he was in a daze from the blow. Defendant tried to fend off the victim's thrusts with the knife. At some point the two disengaged and defendant fled. On this appeal defendant argues, *inter alia,* that the trial court's failure to charge the jury as to the defense of justification was error. The trial court, ruling that justification would not be charged, stated "his [defendant's] story is he didn't stab him at all. If he didn't stab him at all, he couldn't have stabbed him in self defense * * * [t]hen there is no charge of justification". Defendant's position at the trial to the effect that he did not stab the victim does not bar submission of the justification defense (see *People v Steele,* 26 NY2d 526; *People v Burnell,* 84 AD2d 566; *People v Davis,* 74 AD2d 607). Where, however, there is no evidence to support justification, the court may refuse to charge it (*People v Collice,* 41 NY2d 906; *People v Frazier,* 86 AD2d 557). For the purposes of the charge, a defendant is entitled to a view of the trial testimony in a light most favorable to him (*People v Steele, supra; People v Burnell, supra*). There was sufficient evidence presented to the jury by defendant's own testimony, as well as the testimony of some of the prosecution's witnesses, which partially corroborated defendant's version of the incident, to raise the defense of justification (see *People v Frazier,* 86 AD2d 557, 558, *supra* [Sandler, J., dissenting]). According to defendant's version of the incident the victim was the aggressor, hitting him with the handle of the knife. A struggle ensued in which defendant attempted to protect himself from Schuler. In *People v Collice (supra,* p 907) the justification defense was held not available because "[e]ven if defendant had actually believed that he had been threatened with the imminent use of deadly physical force, and there is no evidence that he had so believed, his reactions were not those of a reasonable man acting in self-defense". Contrariwise, in the instant case the jury, after considering and accepting portions of the defense and prosecution evidence, which it is permitted to do (*People v Scarborough,* 49 NY2d 364, 372), reasonably could have concluded that Schuler, the aggressor, was killed during the struggle and not by an intentional act on the part of defendant. Sufficient motive for defendant's contention that Schuler was the aggressor is found in the undisputed evidence that defendant formerly lived with Elease Fields, and that Schuler was her present boyfriend. Defendant testified that while he was attending a party at Fields' apartment he and Fields were in her bedroom alone when Schuler came

into the room and demanded to know what was going on. According to defendant, Schuler didn't believe Fields when she told him they were just discussing defendant's possible subleasing of Fields' apartment. Part of defendant's version of the story was substantially corroborated by Dorina Bryant, a friend of Fields, who attended the party. She testified that when she met defendant as he was leaving the party his lip was swollen and his eye had a mark under it. She did not see these marks on defendant when she was dancing with him earlier in the evening. Finally, Dr. Milton Wald, who testified after reading Schuler's autopsy report, stated that Schuler was "definitely drunk". Wald could not determine from the autopsy report where the person was who inflicted the wounds. He also could not state whether the superficial slicing wounds or the two deeper wounds were inflicted first. Notably, Wald did state that it would not take a great deal of strength to inflict the wound that caused Schuler's death, thus further supporting the inference that it was not caused by an intentional thrust by defendant but perhaps during the struggle. Indeed Wald testified that the two deep wounds found on Schuler's body could have been either intentionally or accidentally inflicted. In light of the above evidence, if the jury had been apprised of the justification defense, it might have concluded that defendant's actions were either completely justified or, at least, that they negated the intent element of the murder count (see Penal Law, § 125.25, subd 1) and instead found him guilty of manslaughter in the second degree (see Penal Law, § 125.15, subd 1; *People v Rivera,* 74 AD2d 589). As such, it was error for the court not to charge justification. This is so despite the testimony on the record that defendant specifically declined the charge of justification. The record of the pretrial proceedings and the trial indicates strong animosity between defendant and his court-appointed counsel. Indeed on this appeal he raises additional arguments concerning ineffective assistance of counsel and improper revocation of his *pro se* status. While we need not pass upon those issues in light of the holding herein, those problems provide sufficient cause for finding that defense counsel's unequivocal statement that defendant did not request the justification charge should not be deemed a waiver by defendant of his right to the charge. Moreover, the record demonstrates that defendant did expect justification to be charged. When defense counsel explained to the court defendant's request regarding the charge on manslaughter in the second degree to the effect that if the jury finds that the defendant "was so intoxicated that he could not consciously disregard, because he could not consciously appreciate the danger, that if the man was stabbed under those circumstances * * * that the jury should find him * * * not guilty", defendant interjected "I said justified". In light of this outburst, the court at least should have told defense counsel to confer with defendant concerning his statement that he was justified. Furthermore, defense counsel's determination not to request the charge was made in response to the trial court's erroneous statement that the charge was not available under the circumstances of this case. His consultation with defendant before declining the charge may very well have consisted of erroneously advising defendant that the charge was not available. We therefore review the charge error as a matter of discretion in the interest of justice (*People v Flores,* 75 AD2d 649; *People v Davis,* 74 AD2d 607, *supra*). Titone, J. P., Mangano and Gibbons, JJ., concur.

Weinstein, J., dissents and votes to affirm the judgment, with the following memorandum: In view of defendant's having consciously made a tactical decision to abjure a plea that he had killed Alfred Schuler in self-defense and his having opted instead for a trial strategy denying his participation in the stabbing and asserting a defense of intoxication, I cannot agree with my

learned colleagues that defendant was denied a fair trial by virtue of the court's failure to charge justification. Without disputing the fact that a defendant's assertion at trial that he did not commit the subject crime does not bar the submission of the defense of justification to the jury in an appropriate case (*People v Burnell,* 84 AD2d 566), my view of the evidence leads to the conclusion that this is not such a case. Accordingly, a jury charge on the issue of justification was unnecessary (see *People v Collice,* 41 NY2d 906; *People v Frazier,* 86 AD2d 557, wherein the justification charge was denied notwithstanding counsel's request therefor) and I believe that an affirmance of the judgment convicting defendant of the crime of murder in the second degree is warranted. As per the testimony of the medical examiner, the victim had been stabbed a total of four times, with two of the wounds described as "penetrating" and one of these being the cause of death. Although the medical examiner was unable to unequivocally ascertain whether the wounds had been intentionally or accidentally inflicted, it is difficult to justify *four* stab wounds as the reaction of a reasonable man·acting in self-defense (Penal Law, § 35.15; *People v Collice, supra*). Justification becomes even more difficult when the testimony of Elease Fields, to the effect that defendant threatened to kill both her and the decedent as he was coming towards the latter with a knife, is considered. Notwithstanding defendant's allegations concerning the disagreements between himself and trial counsel, the record reveals active participation by defendant in the formulation of trial strategy. Defendant opposed the submission to the jury of the lesser included manslaughter charges, choosing instead to "either stand or fall on the count which he is being charged with, murder in the second degree". This tactic is patently inconsistent with a self-defense theory. The court, however, properly charged manslaughter in the first and second degrees, at the request of the People, deeming such charge mandated by a fair view of the evidence. After consulting with counsel, defendant categorically refused to request a justification charge. This harkens back to an earlier point in the trial when, after defendant had testified in part, the court noted that although counsel had previously mentioned justification, self-defense could not be an issue in a case where defendant denied having stabbed the decedent. Defense counsel concurred with the court's reasoning. While a defendant's acquiescence in the trial court's determination that self-defense is not an issue in the case is not determinative of the matter and does not preclude a reversal in the interest of justice (see *People v Rivera,* 74 AD2d 589; *People v Butts,* 14 AD2d 486), it would constitute a perversion of justice to afford such defendant another trial merely because his original trial strategy was ill fated. This, as I perceive it, is the result of the majority's holding. The instant case is distinguishable from *People v Rivera* (*supra*) notwithstanding the majority's reliance thereon. In that case, the omission of a justification charge was clearly inimical to defendant's interests in view of the jurors' query regarding the potential interplay between self-defense and intent. There was no such confusion exhibited by the jurors in this case, which would have rendered the instruction necessary. I strongly disagree with the majority's conclusion that the record demonstrates an expectation on the part of defendant that justification be charged. Such expectation allegedly emanates from the following colloquy: "THE COURT: You specifically asked me not to charge self-defense. MR. HORLICK [defendant's attorney]: There is no self-defense, Judge. This defendant denies stabbing but along the line of self-defense, the question is whether or not the jury can find defendant not guilty if they believe he was intoxicated, there was a fight and a man died, without coming to the conclusion that the defendant stabbed him. I think that is what it is. THE DEFENDANT: And in regards to the context of manslaughter in the second

degree, if coupled — if the elements of intoxication negates the unintentional necessity or whatever regarding man two, if they believe I was intoxicated and didn't know that death was caused or anything or that he caused it himself in the struggle and that I was intoxicated, I cannot be convicted even in the context of manslaughter in the second degree. THE COURT: Denied. Bring the jury in. That is not the law, sir. THE DEFENDANT: Can he clarify what I mean before they come back? THE COURT: Sir, if you were voluntarily intoxicated and had no intent to do any injury, you can still be guilty of manslaughter in the second degree; are you aware of that? THE DEFENDANT: Here's — THE COURT: Are you aware of that? THE DEFENDANT: No. THE COURT: You are not? THE DEFENDANT: What I was trying to say, I explained it to Mr. Horlick upstairs. If I can just say it to him one more time. THE COURT: Say it one more time out loud. [An off-the-record discussion was had between the defendant and Mr. Horlick.] THE COURT: Mr. Horlick, for the last time. MR. HORLICK: I think that now the request is that the Court charge the jury that in the context of manslaughter in the second degree, if the jury finds that the defendant was so intoxicated that he could not consciously disregard, because he could not consciously appreciate the danger, that if the man was stabbed under those circumstances, in the context of manslaughter in the second degree, that the jury should find him guilty — not guilty, I'm sorry. THE DEFENDANT: I said justified. THE COURT: That is not the law under manslaughter. Mr. Horlick, the jury is waiting. Denied. Bring the jury in, please." From defendant's comments regarding intoxication and the manslaughter in the second degree charge, it is evident that his fortuitous use of the word "justified" was not a request for a charge on the element of self-defense. What defendant was apparently seeking was a ruling that his intoxication and alleged lack of knowledge of the death would necessarily preclude his conviction on any of the charges submitted. From this bare statement there is no basis to infer that defendant meant justification in the legal sense, nor are there any references back to other portions of the record to support any such inference. The record is replete with instances of defendant's obstreperous and disruptive conduct, such as his feigning deafness and his making growling noises, which led his attorney to fear for his own safety. In view of defendant's intransigence and generally poor behavior, the trial court was justified in revoking his *pro se* status. As I am of the view that the remainder of defendant's contentions are likewise without merit, I vote to affirm the judgment appealed from.