**Radislaw BLAZIC, Plaintiff–Appellant,**

**v.**

**Robert J. HENDERSON, Superintendent of Auburn Correctional Facility, and Hon. Robert M. Morgenthau, District Attorney, New York County, Defendants–Appellees.**

**No. 171, Docket 89–2044.**

United States Court of Appeals, Second Circuit.

Argued Sept. 27, 1989.

Decided April 2, 1990.

Adina Schwartz, Legal Aid Soc., Federal Defender Services Unit, New York City, for plaintiff-appellant.

Howard L. Perzan, Asst. Dist. Atty., New York City (Robert M. Morgenthau, Dist. Atty. for New York County, and Marc Frazier Scholl, Asst. Dist. Atty., New York City, of counsel), for defendants-appellees.

Before OAKES, Chief Judge, and PIERCE and RUBIN,* Circuit Judges.

PIERCE, Senior Circuit Judge:

Radislaw Blazic appeals from the denial of his petition, pursuant to 28 U.S.C. § 2254, for a writ of habeas corpus by the United States District Court for the Southern District of New York, Judge Robert Ward. In 1981, Blazic was convicted of murder in the second degree after a jury trial in New York State Supreme Court, New York County. His judgment of conviction was affirmed without opinion by the Appellate Division, First Department, in October 1983, *People v. Blazic,* 97 A.D.2d 681, 467 N.Y.S.2d 463 (1983), and in Decem-

---

* Honorable Alvin B. Rubin, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

ber 1983 leave to appeal to the New York Court of Appeals was denied, *People v. Blazic*, 61 N.Y.2d 672, 460 N.E.2d 235, 472 N.Y.S.2d 1032 (1983). He now alleges a federal constitutional violation in the trial court's denial of his request to charge the jury as to the defense of justification. For the reasons which follow, we affirm the district court's ruling.

## I

On the evening of October 1, 1980, Blazic became involved in an argument with one Carlos Oliveras in the vicinity of 105th Street and Lexington Avenue in New York City. One of the men produced a gun and Oliveras was fatally shot in the back. At trial, the prosecution and the defense presented radically divergent accounts as to how Oliveras was killed.

With minor variations, four witnesses for the prosecution testified that in the heat of an argument with Oliveras, Blazic drew a revolver and fired once at Oliveras as Oliveras started to run away. The shot missed. Oliveras ran into the street, followed by Blazic who shot again, this time fatally wounding Oliveras. The medical examiner who performed the autopsy on Oliveras testified that the fatal shot had been fired from a maximum distance of three feet.

Essentially, three witnesses, including Blazic, testified for the defense. Raymond Brooks and Linda Johnson testified that they were walking south on Lexington Avenue when they spotted Blazic and Oliveras arguing ahead of them. Brooks stated that Oliveras drew a gun, and both Brooks and Johnson testified that they saw Oliveras threaten Blazic with a gun. Brooks and Johnson also testified that thereafter Blazic and Oliveras engaged in a struggle, at which point Brooks and Johnson turned their backs to the incident and began to walk away. As they neared the corner of Lexington and 105th Street, they heard a shot and turned around to see Blazic and Oliveras still struggling. Brooks and Johnson continued to walk away from the incident, then they heard a second shot, at which time the altercation was no longer in their view.

Blazic testified that during the course of an argument with Oliveras, Oliveras produced a gun. Blazic further testified that he attempted to disarm Oliveras as follows:

I walked to him and grabbed him and I am trying to talk him down, ... tell him put the gun down.... [M]eanwhile me and the guy was struggling for the gun, I am trying to tell him put the gun down.

A shot goes off between us about ten, fifteen seconds later I trip this man up, he fell down on his chest. I pinned his hands back down, I ripped the gun out of his hand, the gun went off and hit him in the back.

Blazic further explained that during the struggle Oliveras had the gun in his right hand and that, at one point, Blazic had both of his hands around Oliveras' right hand. Blazic testified that as Oliveras stumbled forward, Oliveras attempted to break his fall with his left hand. Meanwhile, Blazic pinned Oliveras' right hand behind Oliveras' back, ripping the gun out of Oliveras' hand at which point the gun discharged. Blazic claimed that he did not have control of the gun at any point during the struggle; he could not recall pressing the trigger of the gun, although he conceded that it was possible that his finger was on the trigger when the fatal shot was fired.

At the close of the evidence, defense counsel initially agreed with the trial court that a justification charge was not warranted. At the trial court's invitation, however, defense counsel reconsidered overnight, and the following day he argued that a justification charge was warranted by portions of the defense evidence and prosecution evidence. Specifically, he argued that the jury could accept the defendant's testimony that Oliveras had drawn the gun and that Blazic disarmed him, but accept that portion of the prosecution's evidence indicating that Blazic shot the victim intentionally, thus providing a basis for a justification charge.

The trial court denied the request to charge the defense of justification, concluding that there was "no reasonable view of the evidence which would sustain a self defense" charge. Thereafter, the jury was

charged on the elements of second degree murder under New York law, including an instruction on the applicable requirement of intent. In explaining the requirement that the shooting must have been done intentionally, the court emphasized that "[t]he important thing is whether ... the act which was done was done deliberately or whether it was done under circumstances which would [indicate] that it was done without the intent to cause death or as claimed by the defense in this case, that it was done accidentally."

During the course of their deliberations, the jury requested further instruction as to the requirement of intent to kill, and the court repeated its earlier instruction on this point. After further deliberations, the jury returned a verdict of guilty of murder in the second degree.

After unsuccessfully pursuing his state court appeal, Blazic filed the present petition in the United States District Court for the Southern District of New York. By Memorandum Decision dated December 28, 1988, the district court, which had referred the matter to Magistrate Buchwald, adopted the Magistrate's Report and Recommendation and dismissed the petition. On April 4, 1989, this court granted a certificate of probable cause.

## II

As an initial argument, the state contends that federal habeas relief is not available because Blazic failed to exhaust state court remedies. There are two prongs to this argument.

### A. Issues Raised in State Courts

■ The first prong of the state's exhaustion claim is that Blazic's justification argument in this court is premised on a different evidentiary theory than that presented to the state courts. The state claims that, both at trial and in Blazic's state court appeal, Blazic premised his justification claim on the prosecution's evidence that he intentionally shot Oliveras. The state further asserts that it was not until Blazic filed his opposition to the Magistrate's report that he also attempted to ground his justification claim on evidence indicating that the gun fired accidentally during a struggle for its possession.

A federal court may not grant a writ of habeas corpus "unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b). In order for the exhaustion requirement to be met, a petitioner must have presented to the state courts " 'both the factual and the legal premises of the claim he asserts in federal court.' " *Harris v. Scully*, 779 F.2d 875, 878 (2d Cir. 1985) (quoting *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir.1982) (in banc), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984)). A federal habeas petition may present a new claim when it is premised on an evidentiary theory not previously presented to the state courts. In such a case, the exhaustion requirement is not met. *See Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir.1987).

We reject at the outset the state's argument that Blazic failed to raise the claim of justification, as such, as premised upon evidence of accident, in the state courts. Even if the trial court was not apprised of this justification theory, we are satisfied that the argument was presented to the Appellate Division. Blazic's brief to the Appellate Division argued that the justification charge had been denied despite evidence "that he *accidentally* shot the deceased during a struggle to disarm him." (Emphasis added). In response, the state's brief countered that "[i]f the shooting was accidental, then defendant could not have acted justifiably in self-defense. Justification or self-defense contemplates an intentional act to protect oneself. Accident means that the requisite intent to act for one's own protection is lacking." Given this exchange between the parties, we reject the argument that the New York courts have not had an opportunity to review the justification claim premised on the accident theory.

Moreover, the state's responding brief to the Appellate Division failed to assert that there was any procedural bar to Blazic's justification argument premised on the ac-

cident theory. Given the state's failure to raise the issue of procedural bar in the state appellate courts, Blazic is not precluded from raising his present claim in the federal court. *See Washington v. Harris*, 650 F.2d 447, 450–52 (2d Cir.1981), *cert. denied*, 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982).

**B. Intervening Change in New York Law on Justification**

In the second prong of its exhaustion argument, the state suggests that the only New York case that arguably supported the giving of a justification charge under Blazic's accident theory was *People v. Kahn*, 113 A.D.2d 773, 493 N.Y.S.2d 364 (2d Dep't 1985), *aff'd*, 68 N.Y.2d 921, 502 N.E.2d 987, 510 N.Y.S.2d 72 (1986) (mem.). In *Kahn*, a prosecution for first degree manslaughter, a prosecution witness testified that the defendant intentionally shot the victim, whereas the defendant claimed that the fatal shot was fired during a struggle for possession of the victim's gun. The Court of Appeals held that the trial court erred in denying a requested justification charge, "even though the act upon which the defense is based was not intentional." 68 N.Y.2d at 922, 510 N.Y.S.2d at 72, 502 N.E.2d at 987.

Since *Kahn* was affirmed approximately three years after Blazic's state court appeal had run its course, the state argues that this court, as a matter of comity, should refrain from exercising jurisdiction over a claim premised on subsequent state case law, and that Blazic should first bring the claim before New York courts pursuant to a motion to vacate the judgment.[1] The issue we must examine is whether, at the time of Blazic's state court appeal, there already existed sufficient authority to warrant the giving of a justification charge under an accident theory.

To evaluate the state's argument that *Kahn* represented new law, we briefly review the state of the law in New York vis-a-vis a justification defense at the time Blazic's state court appeal was pending. Since the 1960s, New York law has provided that a person generally may "use deadly physical force" against another when "[h]e reasonably believes that such other person is using or about to use deadly physical force." N.Y. Penal Law § 35.15(2)(a) (McKinney 1987). One vexing question facing New York courts was whether the entitlement to a justification charge should be defeated when a defendant either denied involvement in a crime or denied intentionally using deadly physical force.

In *People v. Steele*, 26 N.Y.2d 526, 529, 260 N.E.2d 527, 529–30, 311 N.Y.S.2d 889, 891–92 (1970), the Court of Appeals held that a justification instruction may be available even when a defendant has interposed an inconsistent defense. There the prosecution had presented evidence that the defendant intentionally shot the victim, although there also was testimony from prosecution witnesses that the victim had produced a knife during the melee. The defendant interposed the defense of alibi. The court held that the defense of alibi did not preclude a requested charge of justification since the jury might disbelieve the alibi and still find that the defendant acted justifiably.

The holding in *Steele*, regarding the entitlement to a justification charge, was extended to instances when a defendant claimed that a fatal wound was inflicted accidentally. In *People v. Huntley*, 87 A.D.2d 488, 452 N.Y.S.2d 952 (4th Dep't 1982), *aff'd*, 59 N.Y.2d 868, 452 N.E.2d 1257, 465 N.Y.S.2d 929 (1983) (mem.), decid-

---

1. When there has been an intervening change in state law, "[t]he principle that state remedies are exhausted if the claim has once been presented to the highest state court ... is qualified." 17A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4264.4, at 369 (1988). In *Mabry v. Klimas*, 448 U.S. 444, 447, 100 S.Ct. 2755, 2757, 65 L.Ed.2d 897 (1980), the Supreme Court held that when a "federal constitutional claim arises from the alleged deprivation by state courts of rights created under state law," and when such rights were established subsequent to the defendant's state habeas petition, state courts must be given the first opportunity to remedy any federal constitutional violation. *Cf. Washington*, 650 F.2d at 454 (applying *Klimas* when New York Court of Appeals had rendered an intervening decision relevant to federal habeas petition).

ed before the Appellate Division's affirmance herein, the defendant had been charged with second degree murder and manslaughter for a fatal stabbing. The defendant testified that the victim attacked him with a knife, that he wrested the knife away from the victim, and that in the course of a struggle the knife "inadvertently" went into the victim's back. The trial court charged justification as to murder and first degree manslaughter, but refused to give a justification charge as to second degree manslaughter, of which defendant was convicted. The Appellate Division, Fourth Department, held that the trial court's failure to charge justification as to the second degree manslaughter charge constituted reversible error, writing that "[w]here the proof at trial raises the defense of justification, the defendant is entitled to such charge even where it may be inconsistent with other aspects of the defense." 452 N.Y.S.2d at 956 (citations omitted).

The Appellate Division in *Huntley*, also stated that "[t]he testimony of the defendant, if believed by the jury, clearly supported a defense of justification...." 452 N.Y.S.2d at 956. Since the defendant's testimony in *Huntley* did not support a theory of an intentional killing, the court's statement suggests that the evidentiary foundation for a justification charge could lie solely in a defendant's testimony as to accident and that there would not need to be evidence of an intentional act, as there was in *Steele*, for a justification charge to be warranted. Indeed, *Kahn* cited *Huntley* along with two other cases for the proposition that a justification charge could be warranted "even though the act upon which the defense is based was not intentional." 68 N.Y.2d at 922, 510 N.Y.S.2d at 72, 502 N.E.2d at 987; *see also People v. Magliato*, 68 N.Y.2d 24, 30, 496 N.E.2d 856, 860, 505 N.Y.S.2d 836, 840 (1986) (*Huntley* held that § 35.15 applied to defendant's use of deadly force whether or not the forceful act was deliberate).

Although the state belittles the Court of Appeals' affirmance of *Huntley* as "but a cursory memorandum," the decision's significance was not lost on the New York

courts. In *People v. Padgett*, 60 N.Y.2d 142, 456 N.E.2d 795, 468 N.Y.S.2d 854 (1983), the Court of Appeals, in rejecting an argument that the justification defense be limited to instances when the defendant's conduct is admitted to have been intentional, wrote that:

> Here, as in *Huntley*, an aspect of the defendant's testimony is inconsistent with the defense. In that case, Huntley never admitted that he intentionally stabbed the victim, just as the present defendant never admitted that he intentionally broke the glass. Indeed, it appears well settled that this type of inconsistency should not deprive defendant of the requested charge.

*Id.* at 146, 468 N.Y.S.2d at 857 (citations omitted). *Padgett* was decided after the Appellate Division's affirmance herein but before the denial of leave to appeal to the Court of Appeals.

We also note that a number of decisions published by the Appellate Division which were decided prior to the conclusion of Blazic's appeal held that a justification charge was warranted when a defendant claimed to have engaged in a struggle resulting in an accidental death. *See, e.g., People v. Jenkins*, 93 A.D.2d 868, 461 N.Y.S.2d 378, 379 (2d Dep't 1983) (justification charge warranted when jury "reasonably could have concluded that ... the aggressor was killed during the struggle and not by an intentional act on the part of defendant"); *People v. Forchalle*, 88 A.D.2d 645, 450 N.Y.S.2d 220, 222 (2d Dep't 1982) (mem.) (defendant entitled to justification charge when he testified that gun discharged in course of struggle for its possession); *People v. Hill*, 55 A.D.2d 539, 389 N.Y.S.2d 582, 583 (1st Dep't 1976) (mem.) (justification charge warranted where defendant testified that there was struggle for possession of gun, that he did not intend to shoot victim, and that he did not believe he pulled trigger).

While we recognize that New York's law on justification has evolved in certain respects since Blazic's appeal, from our reading of the cases we think that *Huntley* and other authority decided by the time of Blaz-

ic's appeal provided sufficient support for a justification charge premised upon evidence of accident. Consequently, we reject the state's argument that Blazic must return to the New York courts so that they can review his claim under *Kahn.*

### III

█ "In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Casillas v. Scully,* 769 F.2d 60, 63 (2d Cir.1985); *see Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). First, we address a critical question in this appeal as to whether, in our view, there was sufficient evidence to mandate a justification charge under New York law.

In order to be entitled to a justification instruction, a defendant must show both that he subjectively believed that deadly force was necessary under the circumstances and that a reasonable person in his situation would have held this belief. *People v. Goetz,* 68 N.Y.2d 96, 115, 497 N.E.2d 41, 506 N.Y.S.2d 18, 29–30 (1986). Even if a defendant reasonably believed that deadly force was necessary, his actions were not justified if he knew that he could, with complete safety, avoid using deadly force by retreating. N.Y. Penal Law § 35.15(2)(a) (McKinney 1987).

In determining whether the evidence in a particular case warrants the giving of a justification charge, New York courts repeatedly have emphasized that the evidence is to be construed in the light most favorable to the defendant. *Steele,* 26 N.Y.2d at 529, 311 N.Y.S.2d at 891, 260 N.E.2d at 529; *People v. McManus,* 67 N.Y.2d 541, 549, 496 N.E.2d 202, 505 N.Y.S.2d 43, 48 (1986). As such, there must exist a reason-

able view of the evidence from which a jury could conclude that the defendant's acts were justified. As a corollary, a court is not required to adopt an artificial or irrational view of the evidence in deciding whether a justification charge is warranted. *See People v. Butts,* 72 N.Y.2d 746, 750, 533 N.E.2d 660, 536 N.Y.S.2d 730, 733 (1988).

At trial, Blazic argued that a justification charge was required because the jury, by crediting portions of the prosecution's evidence and the defense's evidence, could conclude that Blazic disarmed a gun-wielding Oliveras and then intentionally shot him in an attempt to defend himself. However, those portions of the prosecution's evidence upon which Blazic's trial counsel premised the above theory of an intentional shooting indicated that Blazic shot Oliveras as Oliveras fled. Under these circumstances, not only would it not have been objectively reasonable for Blazic to believe that his life was in danger, but it also would have been the case that Blazic could have retreated in complete safety.[2]

While a justification charge was not warranted based on the prosecution's evidence of intentional shooting, the more difficult question is whether such charge was required based solely upon Blazic's testimony that a gun produced by Oliveras discharged accidentally during a struggle for its possession.

As earlier noted, when a defendant claims to have killed someone accidentally in the course of defending himself, the New York courts repeatedly have found reversible error in the failure to give a requested justification charge. *See, e.g., People v. Huntley,* 87 A.D.2d 488, 452 N.Y. S.2d 952 (4th Dep't 1982), *aff'd,* 59 N.Y.2d 868, 452 N.E.2d 1257, 465 N.Y.S.2d 929 (1983) (mem.); *People v. Jenkins,* 93 A.D.2d 868, 461 N.Y.S.2d 378 (2d Dep't 1983). Although the district court herein acknowledged the *Huntley* line of authority, the court found that the main trigger-

2. A jury also could have parsed the evidence to find that Blazic produced the gun and that the weapon discharged accidentally during a struggle for its possession. A justification charge would not have been warranted under this sce-

nario since, according to New York law, a person normally is not entitled to use deadly force if he is the initial aggressor using such force. N.Y. Penal Law § 35.15(1)(b) (McKinney 1987).

ing condition justifying the use of deadly force was absent in this case, namely, as the district court concluded, that there was "no reasonable view of the evidence that, at the time of the shooting, petitioner reasonably believed the victim was using or about to use deadly physical force." The district court was of the view that Blazic's testimony that he had subdued Oliveras undercut Blazic's argument that the shooting occurred in the context of his acting in self defense. The district court's conclusion that Blazic could no longer have been acting in self defense at the time the fatal shot was fired assumed that the threat of deadly force against Blazic ended once Blazic pinned Oliveras' right hand behind his back and Oliveras lost control of the gun.

Viewing the evidence in the light most favorable to Blazic, as we must, *Steele*, 26 N.Y.2d at 529, 311 N.Y.S.2d at 891, 260 N.E.2d at 529, we cannot agree that the threat of deadly force against Blazic had ceased when the fatal shot was fired. Even if Blazic had pinned Oliveras' right hand behind his back, Blazic did not thereby remove the threat that Oliveras could shoot him. Blazic testified that the fatal shot was fired as he attempted to gain control over the gun, not while he had exclusive possession of it. At bottom, there was evidence indicating that the gun was fired during a struggle for its possession, and under these close circumstances, according to New York case law, a justification charge was warranted. *See, e.g., People v. Huntley, supra; People v. Jenkins, supra.*

### IV

■ A mere error of state law does not deny a defendant his right to due process. *Gryger v. Burke*, 334 U.S. 728, 731, 68 S.Ct. 1256, 1257, 92 L.Ed. 1683 (1948); *Schaefer v. Leone*, 443 F.2d 182, 185 (2d Cir.), *cert. denied*, 404 U.S. 939, 92 S.Ct. 277, 30 L.Ed.2d 251 (1971); *cf. United States ex rel. Means v. Solem*, 646 F.2d

322, 332 (8th Cir.1980) (failure to give properly requested justification charge does not by itself violate due process). For an erroneous state jury charge to result in a federal constitutional deprivation, "the ailing instruction by itself [must have] so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Here, the issue is whether the omission of a justification instruction violated Blazic's right to due process.

■ As a preliminary matter, due process does not require the giving of a jury instruction when such charge is not supported by the evidence. *Hooper v. Evans*, 456 U.S. 605, 611, 102 S.Ct. 2049, 2052, 72 L.Ed.2d 367 (1982); *Hallowell v. Keve*, 555 F.2d 103, 107 (3d Cir.1977). As discussed above, under New York law the evidence herein did not support a justification charge premised on a theory of intentional shooting. Hence, we consider only whether a deprivation of due process occurred insofar as Blazic was entitled to a justification charge under a theory of accidental shooting.

In *Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977), the Supreme Court addressed a state court's failure to give a jury instruction which related to the petitioner's defense. There, the petitioner challenged the trial court's failure to give an instruction explaining the element of causation in New York's murder statute. The trial court had read the indictment and the murder statute when instructing the jury, and both counsel emphasized the causation issue in their closing arguments.

Evaluating the omission in the context of the entire record, the Supreme Court held that no error of constitutional magnitude had occurred. In the Court's view, the trial judge's charge and the attorney's arguments informed the jury that causation was an element of the crime that had to be proved beyond a reasonable doubt. *Id.* at 153–54, 97 S.Ct. at 1736–37.[3] Further, the Court found little merit in petitioner's ar-

---

**3.** Since the Supreme Court found that the causation issue was presented to the jury, it rejected an argument that the jury had failed to make an

essential factual determination as required by *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). *Henderson*, 431

gument that the jury would have reached a different verdict had a more complete instruction on causation been given. Noting that "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law," *id.* at 155, 97 S.Ct. at 1737, the Court compared the instructions that actually were given, with those that arguably should have been given, and concluded that additional instructions "would not have affected [the jury's] verdict," *id.* at 156, 97 S.Ct. at 1737.

We too conclude that the trial court's omission herein would not have affected the jury's verdict. As a theoretical matter, we recognize that the court's instructions on intent did not convey the justification defense, as such, to which we believe Blazic was entitled. The court's instructions on intent emphasized that the key issue to be decided was whether "the act which was done was done deliberately or whether it was done under circumstances which would [indicate] that it was done without the intent to cause death or as claimed by the defense in this case, that it was done accidentally."

New York's justification defense, however, does not directly relate to the actor's *mens rea;* the defense is not "viewed as one that operates to negate or refute an aspect of the crime charged," *People v. McManus,* 67 N.Y.2d 541, 548–49, 496 N.E.2d 202, 206, 505 N.Y.S.2d 43, 47 (1986), as does a claim of accident. Rather, the justification defense reflects a legislative judgment that, under particular circumstances, "conduct, which would otherwise constitute an offense, is simply not crimi-

nal." *Id.* at 545, 496 N.E.2d at 205, 505 N.Y.S.2d at 46; *accord Harris v. Scully,* 779 F.2d 875, 879 (2d Cir.1985). Had a justification charge been given, at a minimum, the jury would have received additional instructions as to the state's burden of proving beyond a reasonable doubt that Blazic did not act justifiably. N.Y. Penal Law § 25.00 (McKinney 1987); *McManus,* 67 N.Y.2d at 546–47, 496 N.E.2d 205, 505 N.Y.S.2d at 46.

■ However, despite the fact that the jury was not apprised of the justification defense, as such, we believe that, as a practical matter, a justification charge would not have altered the result of the trial. Before a jury need consider a defendant's claim of justification, the jury first must find that the prosecution has met its burden with respect to each element of the crime charged.[4] Here, the crime with which Blazic was charged, murder in the second degree, required the prosecutor to prove beyond a reasonable doubt that Blazic had the "intent to cause the death of another person." N.Y. Penal Law § 125.25 (McKinney 1987). If a jury accepted Blazic's testimony that a gun produced by Oliveras discharged accidentally during a struggle for its possession, the jury would have found that the requisite intent to kill was lacking and thus it would have been obligated to acquit Blazic on this basis alone. In this event, the claim of justification would not have warranted independent consideration by a jury.

Nor do we think a justification charge would have affected the outcome if a jury

U.S. at 153–54, 97 S.Ct. at 1736. Although the instant case differs from *Henderson* in that the justification defense clearly was not before the jury, since *absence of justification is not an* element of second degree murder in New York, *Harris v. Scully,* 779 F.2d 875, 879 (2d Cir.1985), the failure to give a self-defense instruction did not amount to a deprivation of due process under *Winship. See generally Engle v. Isaac,* 456 U.S. 107, 119–20, 102 S.Ct. 1558, 1567–68, 71 L.Ed.2d 783 (1982) (states may assume burden of disproving an affirmative defense without also designating absence of the defense as an element of the crime).

4. Indeed, had the court given the standard justification charge, it would have been introduced as follows:

This completes my charge with respect to the crime of murder in the second degree....

\* \* \* \* \* \*

If the People have failed to establish all the essential elements of the crime of murder in the second degree ... as I have just instructed you, you must then find the defendant not guilty. If that is your verdict then you *need not,* of course, consider defendant's further defense of [justification].

However, if you have determined that the People have established all of the elements of the crime of murder in the second degree ... you must *then* turn to consider his defense known in law as "justification"....

1 Criminal Jury Instructions, New York 867 (1983) (emphasis added).

found that the prosecution proved all the elements of second degree murder and a jury proceeded to a self-defense claim. For a jury to find that the prosecution met its burden, a jury would have had to reject significant aspects of Blazic's account. Certainly, if a jury rejected the majority of Blazic's testimony, a justification charge would not have affected the jury's verdict since his testimony was the only evidence supporting a justification claim. Moreover, even if a jury accepted portions of Blazic's account, as suggested in section III, *supra*, we discern no reasonable view of the evidence derived by parsing his testimony that supported a finding of justification.

In sum, notwithstanding our belief that New York law warranted a justification charge in this case, we perceive no basis to conclude that a jury would have responded differently had the charge been given. Thus, on the facts of this case, we reject the contention that the omission of a justification charge "so infected the entire trial that the resulting conviction violate[d] due process." *Cupp*, 414 U.S. at 147, 94 S.Ct. at 400.

For the foregoing reasons, the judgment of the district court denying Blazic's application for a writ of habeas corpus is affirmed.