**Anthony COOK, Petitioner,**

v.

**PEARLMAN, Supt., Respondent.**

**No. 01 CIV. 7168(VM).**

United States District Court,
S.D. New York.

July 26, 2002.

Anthony Cook, Rome, NY, Pro se.

Beth J. Thomas, Asst. Atty. General, Eliot Spitzer, Attorney General, State of New York, New York City, for Respondent.

### DECISION AND ORDER

MARRERO, District Judge.

*Pro se* petitioner Anthony Cook ("Cook") filed a Petition for a Writ of Habeas Corpus, under 28 U.S.C. § 2254, on August 2, 2001 (the "Petition"), attacking his June 30, 1998 state court conviction of second degree burglary and petit larceny, violating New York Penal Laws § 140.55 and § 155.25, respectively. Cook claims that the conviction violated his right to due process of law, guaranteed by the Fourteenth Amendment of the United States Constitution, because the trial court

erroneously permitted the State to admit a particular videotape into evidence. Further, Cook claims that his constitutional right to a "fair trial" has been infringed because the trial court improperly refused to give an interested witness charge to the jury with respect to certain of the State's witnesses and also curtailed the defense's cross-examination of these same witnesses regarding their personal and professional interests in the disposition of the case. For the reasons set forth herein the Petition is denied.

## I. FACTS[1]

Cook was convicted, after a jury trial, in New York State Supreme Court, New York County, for burglary and petit larceny. He was sentenced to concurrent prison terms of seven years on the burglary count and one year on the petit larceny count.[2] Cook's conviction stemmed from a June 29, 1996 incident involving the burglary of the Manhattan apartment (the "Apartment") of a young woman, Pardis Sabba ("Sabba"), in the early morning hours as Sabba and her boyfriend, Jonathon Brenner ("Brenner"), slept in the bedroom.

At trial, the State presented, among other evidence, eyewitness testimony, a videotape (the "Complex Videotape") depicting the physical layout of the apartment building complex (the "Complex"), and the testimony of Complex employees. Sabba testified that she encountered Cook in her Apartment during the early morning hours of June 29, 1996. Sabba identi-

fied Cook as the person who burglarized her Apartment. Keith Galley ("Galley"), the Complex concierge, testified that, after responding to Sabba's telephone call reporting the burglary, he found a copy of the Complex's master key (the "Copied Master Key") in the Apartment's key hole. Moreover, Galley testified that sometime after the burglary he viewed the Complex's surveillance videotape (the "Surveillance Videotape") and identified Cook, who matched Sabba's description of the intruder, as the only person leaving the Complex shortly after the burglary.[3]

Manu Agyei ("Agyei"), a security guard at the Complex, testified that he saw Cook enter and leave the Complex on several occasions during the night of June 28, 1996 and in the early morning hours of June 29, 1996. Moreover, Agyei testified that he witnessed Cook leave the Complex shortly after Sabba reported the burglary to Galley. Kenneth Centeno ("Centeno"), assistant superintendent of the Complex, testified that he also viewed the Surveillance Videotape and identified Cook leaving the Complex shortly after the burglary. Finally, John Tenety ("Tenety"), the building manager of the Complex, testified that he examined the Copied Master Key recovered at the crime scene and determined that it had been copied from the Complex's original master key (the "Original Master Key"), but not with the Complex's legitimate key copying equipment.

In addition to the trial testimony, the State presented the Complex Videotape.

---

1.  The facts summarized herein are derived primarily from the trial transcripts. Also, where necessary, the Court derives facts from Cook's Petition, Cook's appellate brief submitted to the Appellate Division of the New York Supreme Court (the "Appellate Brief"), and Cook's application letter for leave to appeal submitted to the New York Court of Appeals (the "Application Letter").

2.  Cook's June 30, 1998 conviction was secured in a second trial. Cook's first trial ended in a hung jury.

3.  At the time of the incident, Cook lived in the Complex. Also, Cook previously had been employed as a security guard at the Complex. Thus, the Complex employees who testified at trial had, at one point or another, a personal and/or professional relationship with Cook.

The Complex Videotape was prepared by Tenety to help capture and convey to the jury the unique physical layout of the Complex.[4] The State's theory of the case was that Cook, a former Complex security guard with knowledge of the Complex's physical layout and prior access to the Original Master Key, had entered Sabba's Apartment with the Copied Master Key, and upon being confronted by Sabba, exited the Apartment and went up to the rooftop, where he crossed to a different building and then descended and left the Complex through the plaza. The Complex Videotape, the Surveillance Videotape, and the trial testimony of Sabba, Galley, Centeno, Tenety, and Agyei all support the State's theory.

In his defense, Cook presented only one witness, Brenner. Cook's defense also relied heavily on cross-examination of the Complex employees to discredit their testimony. Cook tried to persuade the jury that the Complex employees each had a personal interest in seeing Cook convicted for this crime, and therefore had a motive to frame Cook. Cook alleged that the Complex employees were trying to cover up their failure to prevent the burglary by asserting that this was an "inside job," carried out by a former employee with extraordinary access to resources that "outsiders" lacked. Cook alleged that the employees were lying to avoid any personal liability for the crime and perhaps to shield the Complex from any further litigation.

The jury found Cook guilty. Cook appealed the conviction to the New York Supreme Court, Appellate Division (the "Appellate Division"), arguing that: (1) "[t]he conviction was against the clear weight of the evidence;" (2) "[t]he [Complex] [V]ideotape was entirely speculative and unfounded, and its admission was a violation of appellant's due process rights;" and (3) "[t]he [trial] Court's refusal to give an interested witness charge relating to the apartment management deprived appellant of a fair trial, and the court's abridgment of defense counsel's cross-examination on the building employees' interest in the investigation was a denial of appellant's constitutional right to confront the witnesses against him."

The Appellate Division summarily rejected all of Cook's claims and affirmed the conviction. *See People v. Cook*, 276 A.D.2d 297, 716 N.Y.S.2d 283 (N.Y.A.D. 1st Dep't 2000). Thereafter, Cook submitted the Application Letter to the New York Court of Appeals. Cook's Application Letter addressed only the trial court's failure to give an interested witness charge to the jury. However, Cook attached the Appellate Brief, which contained all of his original grounds for appeal, to the Application Letter. The Court of Appeals denied Cook's petition for leave to appeal. This Petition followed, asserting only the second and third grounds for relief raised in the Appellate Brief.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

As an initial matter, where a party appears *pro se*, the courts are obliged to broadly construe the party's pleadings and interpret them "to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996).

Cook's Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. The Act provides in pertinent part:

---

4. The Complex is unique in that it includes a number of high-rise apartment buildings connected at the top by a rooftop and on the bottom by a plaza. Thus, conceivably, a person could maneuver from one of the apartment buildings to another via the rooftop connection or the plaza connection.

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d). Clearly established federal law refers to the holdings only, not the dicta, of the United States Supreme Court. *See Morris v. Reynolds*, 264 F.3d 38, 46 (2d Cir.2001). The state court's application of clearly established federal law must be objectively unreasonable, not merely erroneous. *See Williams v. Taylor*, 529 U.S. 362, 387 n. 14, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *accord Clark v. Stinson*, 214 F.3d 315, 320–21 (2d Cir. 2000).

Cook's two claims, the trial court's allegedly erroneous admission of the Complex Videotape into evidence and the failure to give an interested witness charge to the jury and the curtailment of the defense's cross-examination, were adjudicated "on the merits" by the Appellate Division. *See Cook*, 716 N.Y.S.2d at 283; *see also Sellan v. Kuhlman*, 261 F.3d 303, 314 (2d Cir. 2001) (holding the Appellate Division's use of the word "denied" sufficient to satisfy the "on the merits" requirement, notwithstanding failure to cite any federal case law or appellant's federal claims). Accordingly, Cook's claims here will be analyzed under the AEDPA's deferential standard of review. *See Washington v. Schriver*, 255 F.3d 45, 55 (2d Cir.2001).

## B. COMPLEX VIDEOTAPE / DUE PROCESS CLAIM

A prisoner seeking a writ of habeas corpus "must 'exhaust[ ] the remedies available in the courts of the State'" before pursuing his claim in a federal court. *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991) (quoting 28 U.S.C. § 2254(b)). A petitioner "must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition." *Id.* (citing *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir.1990)).

The post-trial events surrounding this case are indistinguishable from those presented to the Second Circuit in *Grey*. There, the petitioner had been convicted, by a New York state jury, of manslaughter and criminal weapons possession. The petitioner appealed his conviction to the Appellate Division. The petitioner's appellate brief raised three separate grounds for reversing his conviction. The Appellate Division denied the petitioner's appeal. Thereafter, the petitioner filed an application letter with the New York Court of Appeals for leave to appeal, seeking reversal of his conviction. The petitioner attached to his application letter his appellate brief as originally submitted to the Appellate Division. However, within the text of the application letter, the petitioner only argued one of the original three grounds for reversal. The Court of Appeals denied the petitioner's appeal, and thereafter the petitioner filed a writ of habeas corpus in federal court. The petitioner's habeas petition included the three grounds for reversal that were originally included in his Appellate Division brief, two of which were not argued in the application letter to the Court of Appeals.

Given this procedural posture, the Second Circuit found that the petitioner had

constructively met § 2254's exhaustion requirement because all of the petitioner's claims were, at that time, procedurally barred from presentation to the New York Court of Appeals.[5] *See Grey,* 933 F.2d at 120–21. However, the court also held that "petitioner's forfeiture in state court of his [two claims omitted from the text of his application letter for leave to appeal] bars him from litigating the merits of those claims in federal habeas proceedings, absent a showing of cause for the procedural default and prejudice resulting therefrom." *Id.*

■ Here, Cook's post-trial actions are practically identical to those taken by the petitioner in *Grey.* Cook's Appellate Brief sought reversal of his conviction on three grounds, one of which was the trial court's admission of the Complex Videotape. However, Cook's Application Letter argued only one ground for reversal, the trial court's failure to give an interested witness charge to the jury with respect to the Complex employees. Like the petitioner in *Grey,* Cook attached his Appellate Brief to his Application Letter but did not specifically alert the Court of Appeals to his discussion of the Complex Videotape issue in the Appellate Brief. *See Jordan v. Lefevre,* 206 F.3d 196, 199 (2d Cir.2000) ("[A]rguing one claim in his letter [to the Court of Appeals] while attaching an appellate brief without explicitly alerting the state court to each claim raised does not

fairly present such claims for the purposes of the exhaustion requirement"). The Court notes that a petitioner's burden in adequately presenting an issue previously argued in an appellate brief to the Court of Appeals is not onerous. *See Morgan v. Bennett,* 204 F.3d 360, 369–70 (2d Cir. 2000) (Petitioner's written request that "th[e] [New York] Court [of Appeals] consider and review *all issues outlined in defendant-appellant's* [Appellate Division] *brief*" was enough to adequately present all issues discussed in the Appellate Division brief to the New York Court of Appeals) (emphasis supplied).

■ Nevertheless, Cook is still entitled to federal habeas review of this issue if he can demonstrate cause for the procedural default and prejudice resulting therefrom, or if he can demonstrate that a failure to review his claim will result in a miscarriage of justice. *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 87–91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). To satisfy the cause standard, "a petitioner must show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 127 (2d Cir.1995) (quoting *Carrier,* 477 U.S. at 488, 106 S.Ct. 2639). Cook is unable to meet the cause standard because he provides no explanation at all for not including the Complex Videotape argument in the Application Letter.[6]

---

**5.** New York Court Rules prohibited the petitioner from again seeking leave to appeal in the New York Court of Appeals because he had already made the one request for leave to appeal to which he was entitled. *See* N.Y. Court Rules § 500.10. Moreover, collateral review of the petitioner's claims was also barred because the issues were previously determined on the merits on direct appeal. *See* N.Y.Crim.Proc.Law § 440.10.

**6.** Even construing Cook's petition with the degree of leniency afforded *pro se* petitioners,

the Court is unable to find any reason to overlook the procedural bar preventing review of this issue on the merits. Cook provides the Court no explanation for not raising the Complex Videotape issue with the Court of Appeals. Rather, given the obvious time and resource allocation devoted to the extensive analysis of the interested witness charge issue in Cook's Application Letter and the Complex Videotape analysis in the Appellate Brief, it is reasonable that the omission of the Complex Videotape argument from the Application Letter was a tactical decision to put

Because Cook is unable to establish "cause and prejudice" sufficient to warrant federal review of his claim, he may obtain review of his constitutional claim only if he falls "within the 'narrow class of cases ... implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 315, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 493–94, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)). However, "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* at 316, 115 S.Ct. 851. Cook has not presented any new evidence in the Petition to warrant a miscarriage of justice exception. Accordingly, this claim is procedurally barred.

## C. *INTERESTED WITNESS CHARGE AND OPPORTUNITY FOR CROSS-EXAMINATION*

■ Cook's remaining ground for habeas corpus relief is his allegation that the trial court's failure to give an interested witness charge to the jury with respect to the Complex employees and the curtailment of the defense's cross-examination of the same witnesses deprived him of his constitutional right to a "fair trial." Although Cook generally cites state law in

his Appellate Brief and in his Appellate Letter, he did argue that he was deprived of his "constitutional right to a fair trial." This is sufficient to meet habeas exhaustion requirements.[7]

■ Notwithstanding Cook's attempt to present his claim grounded in federal law, he has not shown a constitutional violation meriting habeas corpus relief. It is well-settled that "[e]rrors in jury instructions normally implicate only State law." *McCaskell v. Keane*, No. 97 Civ. 2999, 2001 WL 840331, at *10 (S.D.N.Y. July 26, 2001) (citing *Gilmore v. Taylor*, 508 U.S. 333, 344, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993)); *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Supreme Court has held that "the fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle*, 502 U.S. at 71–72, 112 S.Ct. 475. Instead, only where "the State law issue has risen to a constitutional violation can a federal court consider the merits of the claim." *McCaskell*, 2001 WL 840331, at *10 (citing *Blazic v. Henderson*, 900 F.2d 534, 541 (2d Cir.1990); *U.S. ex. rel. Stanbridge v. Zelker*, 514 F.2d 45, 50 (2d Cir.1975), *cert. denied*, 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102 (1975)).

■ Here, no constitutional issue is presented. Although Cook is entitled to a jury charge that reflects his defense, *U.S.*

---

forth what Cook perceived to be his best argument. Moreover, even if, in hindsight, appellate counsel's decision to forego the Complex Videotape issue in the Application Letter was erroneous, such a mistake does not rise to the level of error required of an ineffective assistance of counsel claim. *See Carrier*, 477 U.S. at 492, 106 S.Ct. 2639 ("attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial").

7. Cook has exhausted this federal claim in the state courts because his Appellate Brief refer-

enced sections of the United States Constitution and he followed up on these claims in his Application Letter. *See Gonzalez v. Sullivan*, 934 F.2d 419, 423 (2d Cir.1991) (petitioner's federal claims deemed exhausted in state courts after citing to Fourteenth Amendment in a point heading of a brief submitted to the Appellate Division); *see also McCaskell v. Keane*, No. 97 Civ. 2999, 2001 WL 840331, at * 10 (S.D.N.Y. July 26, 2001) (petitioner met habeas exhaustion requirements when he argued to the Appellate Division and the Court of Appeals that he had been "deprived of a fair trial").

*v. Vasquez,* 82 F.3d 574, 577 (2d Cir.1996), "[a] conviction will not be overturned for refusal to give a requested charge ... unless that instruction is legally correct, represents a theory of defense with basis in the record that would lead to acquittal, and the theory is not effectively presented elsewhere in the charge." *Id.* at 577. (citing *U.S. v. Perez,* 897 F.2d 751, 754 (5th Cir.1990)). Additionally, "the habeas court must consider the whole jury charge in the context of all the charges given and the events at trial." *McCaskell,* 2001 WL 840331, at *10 (citing *Vargas v. Keane,* 86 F.3d 1273, 1277 (2d Cir.1996)).

Here, the trial court gave the following instruction to the jury:

> Since you are the exclusive judges of the facts you have the duty to evaluate the testimony. It is your duty to sort out the credible testimony and disregard any testimony which is not credible. One of your chief functions as judges of the facts is to determine the credibility of the witnesses because the facts depend upon the testimony of the witnesses ... [y]ou should consider ... the witness' interest or motive for testifying ... [y]ou should ask yourselves ... was the witness demonstrably biased or prejudiced or did the witness have a demonstrable reason to falsify. [In determining credibility, you should consider] the witness' interest or lack of interest in the outcome of the case. The witness' motive to tell the truth or not to tell the truth ... [y]ou have a right to consider whether any witness is actuated by bias or prejudice or has an interest in the outcome of the case which would permit the witness to testify to something other than the truth.

The trial court's jury charge permitted Cook to " 'effectively present[ ]' [his] argument as to the value of the [witnesses'] testimony." *Id.* (quoting *Vasquez,* 82 F.3d at 577). The jury was instructed to consider the reasons or motives that would inspire or cause the Complex employees, or any other witness for that matter, to lie and implicate Cook in the burglary.

Moreover, the trial court permitted Cook ample latitude on cross-examination and in summation to call into question each witness' motive for testifying. For example, in summation defense counsel argued, "Normandie Court which as you heard from Mr. Tenety has liability insurance. Mr. Centeno is a person who did not want to be held responsible for something on his watch." Additionally, on cross-examination defense counsel was permitted to question the Complex employees on their knowledge of the Complex's liability insurance and on their possible motives for falsifying their testimony.[8]

The trial court's permitting this line of cross-examination "show[s] that the failure to give a more specific instruction did not violate [Cook's] due process rights." *See id.* (citing *Smith v. Gibson,* 197 F.3d 454, 460 (10th Cir.1999) ("court's failure to give specific charge as to treatment of [wit-

---

**8.** For example, on cross-examination defense counsel made the following remark to Tenety: "would it be fair to say that in your experience and your familiarity ... of liability insurance that in fact if a loss to a tenant was caused by a building employee that the building could be liable under your—under the terms of your insurance?" Other examples of the latitude afforded defense counsel in presenting its theory that the Complex employees were lying to protect their own interests, are the following questions to Complex employees on cross-examination: "In fact, you are being paid by Normandie Court today, is that correct?"; "You are presently employed by Normandie Court, is that correct? ... [a]nd, you are being paid today by Normandie Court, is that correct?"; "[I]f the master key was missing you would be responsible, wouldn't that be correct?" (Trial Transcript at 305, 337, 356, 386–87.)

ness'] testimony will not permit habeas relief where defense counsel had opportunity to attack [witness'] credibility and was able to bring to the jury's attention the fact that the [witness] was an interested witness")).

Accordingly, because the lack of a more specific interested witness charge to the jury did not result in a federal constitutional violation, Cook's claim on this ground is denied. Also, given the specified instances of defense counsel's opportunity to confront the Complex employees on cross-examination, the Court finds that Cook's due process rights were not infringed by the trial court's rulings regarding the latitude afforded Cook's counsel in presenting the defense's theory of the case.

### III. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that petitioner Anthony Cook's petition for a writ of habeas corpus *is denied.*

The Clerk of Court is directed to close this case.

**SO ORDERED.**